OPINION
{¶ 1} Attorney Dwight Brannon appeals from the trial court's order finding him in contempt of court and from the $500 fine imposed upon him by the court.
 {¶ 2} The contempt finding occurred during a suppression hearing wherein Brannon sought to suppress evidence found during a search of VFW Post 431 which resulted in the Post being prosecuted for illegal gambling. Near the conclusion of the suppression hearing, the following occurred during the re-cross-examination of Detective Chad Knight by Assistant Prosecuting Attorney Alison Vendeley:
 {¶ 3} "BY MS. VENDELY:
 {¶ 4} "Q. Isn't there another felony case that's pending for gambling against the VFW for an incident that occurred on January 29th, 2001?
 {¶ 5} "A. Yes, ma'am. I believe that's still pending in Common Pleas Court.
 {¶ 6} "Q. And wasn't that investigation —
 {¶ 7} "MR. BRANNON: Objection. There must be a caption. I'm not aware of it. Do we have a caption?
 {¶ 8} "THE COURT: I'm not aware of it. It's not on this docket.
 {¶ 9} "MR. BRANNON: Is this the co-defendant in this case?
 {¶ 10} "MS. VENDELY: No, it is not. It is State of Ohio versus VFW Post 431, 2001-CR-867, which defense counsel Brannon filed a time waiver in to track with this case while the motion to dismiss and motion to suppress in this case was pending.
 {¶ 11} "THE COURT: Where is that case pending, with what judge?
 {¶ 12} "MS. VENDELY: In this Court, Your Honor, you.
 {¶ 13} "MR. BRANNON: I expect them both to be tried together. I have no knowledge of separate —
 {¶ 14} "MS. VENDELY: They are being tried —
 {¶ 15} "THE COURT: Ladies, gentlemen, I'm not going to listen to you bicker. I will not put up with this conduct from either of you throughout this case, or one or both of you is going to the county jail.
 {¶ 16} "MR. BRANNON: Would you hold your voice down, Judge.
 {¶ 17} "THE COURT: Mr. Brannon, you do not tell me to hold my voice down. This is my courtroom.
 {¶ 18} "MR. BRANNON: It's our courtroom. For the record, it's our courtroom. I don't know what is the problem.
 {¶ 19} "THE COURT: Mr. Brannon, be quiet now. That's an order. That's a direct order. I will not tolerate the unprofessionalism I've already seen in this case from the both of you. Absolutely not.
 {¶ 20} "Mary Kay, have counsel wait outside, please. Take both of them out of this courtroom.
 {¶ 21} "(Whereupon, counsel left the courtroom.)
 {¶ 22} "THE COURT: You may step down, Detective. Please wait in the courtroom. Mr. Godsey, please wait in the courtroom.
 {¶ 23} "Leigh Ann, come into my chambers, please.
 {¶ 24} "(Whereupon, a recess was taken.)
 {¶ 25} "THE COURT: The record should reflect that prior to taking the recess, the Court did characterize the conduct of both attorneys this morning as unprofessional, making it a very difficult proceeding for my court reporter as well as the Court. My court reporter and I, the Court, were forced to listen to two people talking at once, that is, counsel for the State and counsel for the defense.
{¶ 26} "The Court has reviewed the record, and quoting therecord, and quoting specifically Mr. Brannon, `Would you hold your voicedown, Judge;' Mr. Brannon, it's the judgment of this Court that yourcomment is contempt, contemptuous. Do you have anything to say, Mr.Brannon?
 {¶ 27} "MR. BRANNON: Your Honor, it wasn't contemptuous. It was asking the Court to not be raising their voice beyond that which was necessary, and that is not contempt. That is showing respect for the Court and asking the Court to show respect for counsel and the others present. And no one meant to be in contempt of this Court. I don't know why it was necessary to address us in the tone and the degree. It is true that we on occasion were interrupting each other, maybe talking over, but not meaningfully so and not in order to be contemptuous.
 {¶ 28} "And if I offended the Court, I apologize again, but recently there seems to be some thought on the part of this particular court that somebody is trying to take this courtroom over, or no one else has a right to speak, or it's not our courtroom.
 {¶ 29} "I understand the role of the judge. I understand my role, not as important as the judge, but I think it's important that everyone shows everyone respect, and there's no use screaming and yelling, and your voice rose to that point, and I simply requested the Court that I could hear you without straining, and it was very intimidating, and it was very degrading to me.
 {¶ 30} "And I do consider myself a professional. I felt that the conduct, while it was slightly acrimonious, was not unprofessional, and I could not say the same about the Court. And I think we have a duty to remind the Court for whatever reason, whenever the Court feels that there is a reason — and you certainly can discipline, berate or do anything else with counsel, but I felt that the conduct of the Court at that particular point in time was getting to the point that went beyond being constructive but was appearing to be something else. I'm probably wrong, and if the Court wants to take it that way, then I can't do anything about it.
 {¶ 31} "I love this Court. I love this Judge, but, again, this was a fairly simple hearing. It's tough issues. I didn't feel it was that acrimonious, and I didn't feel that either the parties or counsel were acting in such a manner that the Court should have done that.
 {¶ 32} "But for years in this courtroom there have been some judges who have taken advantage of their situation, berated counsel, ran them out of the courtroom and done other things, and I made up my mind that at least I would ask judges not to do that if that was done to me ever again, and I would stand on that. If that's contemptuous, so be it.
 {¶ 33} "THE COURT: For over an hour this Court observed behavior by counsel that was rude and disrespectful. That remark the Court findsto be contemptuous, orders a fine of $500 imposed against you, Mr.Brannon. This finding of contempt will be journalized by judgment entryby the Court."
 {¶ 34} In the journal entry the judge noted that Brannon obstructed the administration of justice by engaging in ill-mannered and disruptive conduct evidenced by the following remarks and behavior:
 {¶ 35} "I) Mr. Brannon repeatedly interrupted the Court as well as opposing counsel as evidenced by the numerous breaks in the transcript (denoted by `—'), as well as bickering regarding various objections and rulings.
 {¶ 36} "II) Mr. Brannon frequently talked over opposing counsel and/or the Court. Two distinct warnings were given, the second culminating in Mr. Brannon presuming to tell the Court how to manage the courtroom.
 {¶ 37} "III) Mr. Brannon clearly incited an inexperienced prosecutor, Ms. Vendely, into responding similarly, but without his condescending and bullying tenor. Unfortunately, a verbal transcript cannot convey the full effect of his misbehavior.
 {¶ 38} "IV) Upon being warned a second time about the lack of professionalism occurring throughout the hearing, Mr. Brannon vehemently and defiantly stated to the Court, `Would you hold your voice down, Judge?' This remark, together with the aforementioned conduct, was not only contemptuous, but also clearly interrupted and obstructed the administration of justice. This remark by counsel and those that followed were obstreperous and interfered with the actions of a trial court in `its' courtroom. Furthermore, this Court concludes that those remarks did in fact impede, embarrass, and disrupt the Court in the performance of its functions, thereby necessitating a recess.
 {¶ 39} "Regrettably, Mr. Brannon was also fifteen (15) minutes late for the hearing and before entering the courtroom, engaged in an ill-mannered debate with opposing counsel about his right to call witnesses at a hearing attacking the probable cause for a search warrant. This earlier conduct does not serve as basis for the contempt finding, but is rather a comment by this Court of a pattern of behavior that steadily declined over the course of the evidentiary hearing.
 {¶ 40} "This Court acknowledges that the second warning to counsel was given by the Court in `louder' voice than the first warning, so as to be heard above counsel and in an effort to restore some dignity to a proceeding in which Mr. Brannon irreverently presumed to instruct the Court on how to handle the lack of professionalism exhibited by counsel.
 {¶ 41} "It is equally regrettable that when provided an opportunity to respond to the Court's judgment of contempt, Mr. Brannon not only laid the blame on the Court by suggesting the Court was unprofessional but also indicted other judicial colleagues as well. These additional comments impugned the Court, as well as the judicial process, comments tending to bring the administration of law into disrespect."
 {¶ 42} The trial court then made its conclusions of law.
 {¶ 43} "In conclusion, a court may punish conduct as direct contempt if that conduct constitutes misbehavior that poses an imminent threat to the proper administration of justice. State of Ohio v. Kitchen
(June 12, 1998) 128 Ohio App.3d 335 (Second District Court of Appeals). A court is charged with the duty to maintain order in the courtroom. When an attorney fails to recognize his obligations and insists upon imposing his will and impinging upon the Court's duty to maintain order thereby obstructing the administration of justice, he must realize the sanction of contempt awaits in the wings to curb unacceptable behavior. The sanction of contempt is the only tool some attorneys understand by which a court can maintain order.
 {¶ 44} "This Court does not enter this finding lightly nor with acrimony. In over seven years on the bench, this is the first such formal finding made by this Court.
 {¶ 45} "Further, as noted in many Ohio Supreme Court cases, the courtroom is not for the faint of heart. It is an environment for the hardy, for judges of fortitude with thick skins. However, as outlined above, counsel's tone, behavior, and comments crossed the line, a line demarcated by contemptuous remarks that merely offend the personal feelings and sensibilities of the Court versus remarks which pose an actual and imminent threat to the administration of justice.
 {¶ 46} "This Court finds beyond a reasonable doubt that Mr. Brannon's repeated misconduct and statements obstructed the administration of justice in that it interfered with the maintenance of the order, dignity, and decorum of the Courtroom."
 {¶ 47} In a single assignment of error, Brannon contends the trial court abused her discretion in finding him guilty of criminal contempt since such finding was unreasonable and unsupported by the evidence.
 {¶ 48} Brannon argues that our examination of the record will reveal that the 39 pages of transcript leading up to the judge's remarks about counsels' conduct contain nothing that would serve to categorize the suppression hearing as anything but routine. He argues that at no time did he engage in conduct which could be considered disrespectful or discourteous. He admits that at one point in the hearing he did interrupt the prosecutor's response but he did abide by the court's warning that she would not tolerate "everyone talking at once." Brannon argues that the record affords no explanation why his simple request that the judge hold her voice down was transmogrified into an offense punishable as criminal contempt. Brannon also notes that he immediately apologized for any offense the court took to his remarks, and the hearing continued to an orderly conclusion.
 {¶ 49} Brannon argues that a review of the transcript leading up the judge's comment that she would not listen to the attorneys' bickering does not provide any explanation for the court's remark. He argues the remarks of both counsel appear to be brief, logical and innocuous. Brannon notes that both he and the court inquired about the other criminal case which was the subject of the prosecutor's inquiry. Brannon notes that he merely expressed his expectation that the cases would be tried together, was then interrupted by the prosecutor, who was then interrupted by the judge.
 {¶ 50} Brannon also respectfully submits that if an attorney raises his or her voice beyond an acceptable level, it is appropriate for the judge to ask the attorney to lower his or her voice. Conversely, Brannon argues that if a judge raises his or her voice beyond an acceptable level, it is equally appropriate for an attorney to request that the judge lower his or her voice. Brannon argues that to do so does not interfere with the administration of justice.
 {¶ 51} Brannon also argues that his remark was not an intentional violation of a court order, nor was it made to embarrass, impede or obstruct the trial court in the performance of its functions. He also argues that his remarks were intended to put out rather than kindle a fire and that the administrator of justice was under no threat, imminent or remote, of danger.
 {¶ 52} The State argues that we should not reverse the trial court's contempt finding because it argues Brannon's manifest disrespect for the court interfered with the administration of justice. The State argues that Brannon sidetracked the hearing by his insistence on having the last word. The State argues that Brannon was disrespectful to the court and his efforts to impose his will upon the court transformed the hearing from an orderly presentation of evidence into a showdown as to who would control the proceedings.
 {¶ 53} Since the alleged contempt in this matter occurred in open court, it was of a direct nature and hence, subject to summary disposition by the court. R.C. 2705.01. The determination of contempt is left to the sound discretion of the trial judge. State v. Kilbane
(1980), 61 Ohio St.2d 201. The parties do not dispute that Brannon was convicted of criminal contempt, and thus the State must demonstrate that Brannon's conduct constituted contemptuous conduct by proof beyond a reasonable doubt. Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250.
 {¶ 54} Because of the summary nature of a direct contempt conviction, the court must be careful to guard against confusing actions or words which are contemptuous to the judge's personal feelings or sensibilities and actions or words which constitute punishable, criminal contempt of a summary nature because of posing an actual or imminent threat to the administration of justice. In re Little (1972), 404 U.S. 553.
 {¶ 55} In Little, the defendant who argued his case pro se had stated in his closing argument to the jury that the judge was biased, had prejudged the case, and that he, the defendant, was a political prisoner. At the conclusion of the trial, the trial court found defendant in direct contempt for the statements and sentenced him accordingly. In reversing the conviction, the Supreme Court in a per curiam opinion noted at page 555:
 {¶ 56} "We hold that in the context of this case petitioner's statements in summation did not constitute criminal contempt. The court's denial of the continuance forced petitioner to argue his own cause. He was therefore clearly entitled to as much latitude in conducting his defense as we have held is enjoyed by counsel vigorously espousing a client's cause. In re McConnell, 370 U.S. 230 (1962). There is no indication, and the State does not argue, that petitioner's statements were uttered in a boisterous tone or in any wise actually disrupted the court proceeding. Therefore, `The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil. . . . [T]he law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be men of fortitude, able to thrive in a hardy climate.' Craig v. Harney, 331 U.S. 367, 376 (1947). `Trial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.' Brownv. United States, 356 U.S. 148, 153 (1958)."
 {¶ 57} In State v. Wilson (1972), 30 Ohio St.2d 312, the Ohio Supreme Court upheld a trial court's contempt finding based upon counsel's misconduct during trial. The court noted that the record demonstrated that appellant unnecessarily repeated objections, requests for examination and requests for maintenance of the record and a constant disregard of the court's order to sit down, all of which amounted to disrespect for the court, to disruption of quiet and order, and to actual interruption of the court in the conduct of its business. The court then noted:
 {¶ 58} "The integrity of the judicial process demands total deference to the court, particularly on the part of its officers. Respect for the law and obedience to the orders and judgments of the tribunals by which it is enforced lies at the very foundation of our society. No amount of provocation on the part of the judge can be permitted to excuse counsel from the obligation of his oath of office (`I will maintain the respect due to courts of justice and judicial officers'); to excuse him from his duties imposed by the Code of Professional Responsibility; or to condone the acts of counsel if in fact they are in themselves contemptuous.
 {¶ 59} "If a judge behaves contumeliously, reprehensible as it may be, such conduct should be made a part of the record, but cannot be corrected by counsel in the courtroom. There are other remedies for transgressions of judicial decorum, none of which is exclusive — such as appellate review, grievance proceedings under our Rules, impeachment and the election process, for example."
 {¶ 60} In State v. Conliff (1978), 61 Ohio App.2d 185, the Court of Appeals of Franklin County held that displays of ill-mannered conduct are not summarily punishable under the law of direct contempt unless they pose an imminent threat to the administration of justice. In Conliff, the defendant was prosecuted for assault and disorderly conduct after he threw a pie in the face of Governor Rhodes at the Ohio State Fair. After the jury acquitted Conliff of the assault charge but found him guilty of disorderly conduct, Conliff asked the judge if he wanted "his ounce of flesh." The judge then summarily held Conliff in contempt for his remark and sentenced him to ten days in jail. In reversing the conviction, Judge John McCormac wrote:
 {¶ 61} "The circumstances in which defendant made the offensive statement are relevant in determining whether defendant's conduct was of such nature as to amount to criminal contempt. In the instant case, the record fails to disclose that the statement constituted `an imminent threat to the administration of justice.' The judge stated that he was about to sentence the defendant on the disorderly conduct charge `* * *as soon as (he) had some order in the courtroom.' It is apparent from the judge's statement that the courtroom was somewhat less than orderly when the initial, off the record, inquiry was made. The record does not indicate that the defendant's statement was loud or boisterous or otherwise disruptive of the court's proceeding. After defendant directed his comment to the court, the judge asked him to verify it, which he did, after the jury had withdrawn from the courtroom.
 {¶ 62} "Under these circumstances, defendant's remark, while unwise, insolent and probably personally insulting to the judge, was not of a nature which `* * *tends to bring the administration of the law into disrepute and disregard or otherwise tends to impede, embarrass or obstruct the court in the performance of its functions.' In re Green
(1961), 172 Ohio St. 269. (Paragraph one of the syllabus.)
 {¶ 63} "We have found no cases supporting summary criminal contempt for a statement as mild as the one in this case, occurring singly, at the end of the proceeding, where the only apparent effect was to ruffle the judge's sensibilities.
 {¶ 64} "While displays of ill-mannered conduct are not condoned by this court, neither are they punishable under the law of direct contempt unless they pose an imminent threat to the administration of justice. We are certainly sympathetic to the judge who was exposed to the biting remark of the defendant, but the administration of justice is best served by restricting the power of summary direct contempt to that conduct which tends to impede, embarrass or obstruct the court in the performance of its function rather than permitting it to be applied to a single comment that only tends to indicate a personal, although not disruptive, feeling of contempt by the defendant towards
 {¶ 65} the court and the system of justice. To allow a summary conviction of direct contempt with the offended judge being judge, jury and executioner, with the power to impose a severe jail sentence, poses too great a threat of arbitrary treatment to permit it to be based on less. The instant case is a good example. The defendant both in his in-court attitude and out-of-court conduct probably radiated contempt for the institutions of government and, to cap it off, had been acquitted of the major charge. The stage was set for unintentionally using summary contempt for purposes for which it was not designed. "
 {¶ 66} Recently, the Sixth Circuit Court of Appeals reversed a criminal contempt upon counsel who had appeared late for court on a second occasion. In re M. Dianne Smothers (2003), 322 F.3d 438. In its opinion, the circuit court reminded the trial court that criminal contempt is a crime in the ordinary sense citing Bloom v. Illinois (1968),391 U.S. 194. The court also noted that the trial court should keep in mind that the judicial contempt power is "shielded from democratic controls" and hence should be exercised with restraint and discretion.Roadway Express Inc. v. Piper (1980), 447 U.S. 752.
 {¶ 67} The court also noted that when confronted with actions that may not fall within a federal court's contempt power, the court's inherent power to maintain respect and decorum grants courts the flexibility to equitably tailor punishments that appropriately fit the conduct. The court noted progressive discipline is always appropriate, such as a lecture, a reference to the bar association for a public reprimand, or the imposition of a fine unaccompanied by a formal sanction could be used.
 {¶ 68} Brannon argues that the trial court abused its discretion in the sense that the trial court acted "unreasonably" in finding him in criminal contempt. A decision is unreasonable if there is no sound reasoning process that would support the decision. AAAA Enterprises,Inc. v. River Place Community Urban Development Corp. (1990),50 Ohio St.3d 157. He also contends the judgment of contempt was unsupported by the requisite evidence.
 {¶ 69} From a review of the transcript, it would appear that the remark that triggered the trial court's finding of contempt was Brannon's request that the trial judge keep her voice down. The State conceded in oral argument that the judge spoke loudly when she admonished counsel to stop bickering. Later in the court's journal entry, the court noted additional grounds for the contempt citation, such as Brannon's repeated interruption of the court and counsel, as well as bickering regarding objections and rulings, frequent talking over counsel, and inciting an inexperienced prosecutor into responding in a like manner.
 {¶ 70} We have reviewed carefully the transcript of the short suppression hearing. Nothing remarkable occurred until page 27 of the hearing when the following occurred:
 {¶ 71} "MR. BRANNON: He's a liquor agent and then he's inside. Well, then, Your Honor, he's not got confidential status if he's inside.
 {¶ 72} "THE COURT: It's the State's position that the liquor agent is a confidential informant?
 {¶ 73} "MS. VENDELY: Yes, Your Honor.
 {¶ 74} "THE COURT: Well, then the burden is on you to demonstrate his name needs to be disclosed, and that's a pretty heavy burden, and we're not going forward on that today. The objection if there is one from the State is sustained.
 {¶ 75} "MS. VENDELY: There is.
 {¶ 76} "MR. BRANNON: The burden is on the State to show that, Your Honor.
 {¶ 77} "THE COURT: No, the burden is on the defense to demonstrate a need for disclosure. The law is clear. I'm not going to argue that point with you, Mr. Brannon. The objection was sustained. There's no motion before this Court to disclose the name of any confidential informant. I will not deal with that this morning,.
 {¶ 78} "MR. BRANNON: I understand. I'm not arguing with you.
 {¶ 79} "THE COURT: Please move on. Motion sustained."
 {¶ 80} The following occurred at page 30 of the proceedings:
 {¶ 81} "BY MS. VENDELY:
 {¶ 82} "Q. Can you tell me whether the confidential informant or the vice detective, whether they were a member of the VFW at the time of their entry?
 {¶ 83} "MR. BRANNON: I'm going to object unless she discloses, Your Honor. You can't have it both ways.
 {¶ 84} "MS. VENDELY: Your Honor, I'm not —
 {¶ 85} "MR. BRANNON: You can't have it both ways.
 {¶ 86} "THE COURT: Well, wait a minute. I don't want everybody talking at once. I will not tolerate that. That's not going to happen in this courtroom."
 {¶ 87} Nothing remarkable occurred until page 38 when the prosecutor inquired of Detective Knight if there was another case pending against the VFW and when Knight acknowledged one was pending in the court, Mr. Brannon interrupted the prosecutor to ask for the caption of the other case. After the prosecution provided the caption and informed the court that the other case was pending before the same judge, Mr. Brannon responded that he expected that both cases would be tried together.
 {¶ 88} "MR. BRANNON: I expect them both to be tried together. I have no knowledge of separate —
 {¶ 89} "MS. VENDELY: They are being tried —
 {¶ 90} "THE COURT: Ladies, gentlemen, I'm not going to listen to you bicker. I will not put up with this conduct from either of you throughout this case, or one or both of you is going to the county jail.
 {¶ 91} "MR. BRANNON: Would you hold your voice down, Judge.
 {¶ 92} "THE COURT: Mr. Brannon, you do not tell me to hold my voice down. This is my courtroom.
 {¶ 93} "MR. BRANNON: It's our courtroom. For the record, it's our courtroom. I don't know what is the problem.
 {¶ 94} "THE COURT: Mr. Brannon, be quiet now. That's an order. That's a direct order. I will not tolerate the unprofessionalism I've already seen in this case from the both of you. Absolutely not."
 {¶ 95} The above three passages from the hearing transcript represent the facts supporting the contempt citation. The record fails to support the trial court's finding that Mr. Brannon "repeatedly" interrupted the court as well as opposing counsel. Mr. Brannon did interrupt Ms. Vendely at page 30 of the transcript and again at page 38 when he requested the caption of the other pending criminal prosecution against his client. In an adversarial hearing, it is not unusual that counsel may on a few occasions jump the gun and interrupt opposing counsel.
 {¶ 96} The court indicated that Mr. Brannon "bickered" regarding various objections and rulings but the only apparent bickering over the court's ruling was at page 27 when after the prosecutor interposed an objection to releasing the name of an alleged confidential informant, Mr. Brannon responded he believed the burden was on the State to show the need for confidentiality. We see no evidence Mr. Brannon
 {¶ 97} frequently talked over opposing counsel except for the two interruptions previously noted. We also see no evidence that Mr. Brannon incited the prosecutor into engaging in unprofessional behavior. The facts in this case bear little resemblance to the facts in State v.Wilson, supra.
 {¶ 98} Finally, we fail to see how Mr. Brannon's mere request to have the judge hold her voice down amounted to contemptuous conduct. The trial judge may have been offended by Mr. Brannon's remark but Brannon's remark presented no actual or imminent threat to the administration of justice. The appellant's assignment of error must be Sustained.
 {¶ 99} The judgment of the trial court is Reversed.
FAIN, P.J., concurs.